UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN P. KLINE, | ) | CIVIL ACTION NO. 4:22-cv-00214 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.   INTRODUCTION

Plaintiff Nathan P. Kline, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On April 4, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15).  In this application, Plaintiff alleged he became disabled on July 1, 2017, when he was 39 years old, due to the following conditions:  diabetes mellitus, osteoarthritis of the left knee and right ankle, obesity, cellulitis of the fourth toe of the right foot, Charcot Foot and related arthropy, bilateral neuropathy of the feet, frequent seizures, cognitive issues related to Plaintiff's seizures, and bilateral ankle pain. (Doc. 1, pp. 2-3). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, sleep, spend more than ten minutes away from the bathroom, and concentrate. (Admin. Tr. 20). Plaintiff has at least a high school education. (Admin. Tr. 24). Before the onset of his impairments, Plaintiff worked as a warehouse worker and store laborer. (Admin. Tr. 24).

On August 8, 2019, Plaintiff's application was denied at the initial level of administrative review; it was denied upon reconsideration on July 10, 2020. (Admin. Tr. 15). On August 11, 2020, Plaintiff requested an administrative hearing. (Admin. Tr. 15).

On November 16, 2020, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Scott M. Staller (the "ALJ"). (Admin. Tr. 15, 26). On November 30, 2020, the ALJ issued a decision

denying Plaintiff's application for benefits. (Admin. Tr. 26). On December 1, 2020, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 5).

On January 27, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On February 12, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1, pp. 3-7). As relief, Plaintiff requests that the court reverse the Commissioner's decision. (Doc. 1, p. 8).

On April 21, 2022, the Commissioner filed an answer. (Doc. 11). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 11, pp. 1-4). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 14) and the Commissioner's Brief (Doc. 16) have been filed. This matter is now ready to decide.

## III.  STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

---

[1] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of district court review

in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

In practice, this is a twofold task. First, the court determines whether the final

decision is supported by substantial evidence. To accomplish this task, the court

must decide not only whether "more than a scintilla" of evidence supports the ALJ's

findings, but also whether those findings were made based on a correct application

of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-

---

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial

weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do

---

[11] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[12] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[14] 20 C.F.R. § 404.1520(a).

any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[18] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

---

[15] 20 C.F.R. § 404.1520(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2).

[18] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

## IV.    DISCUSSION

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In his November 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2022. (Admin. Tr. 17). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between April 30, 2019 (Plaintiff's amended alleged onset date) and November 30, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 25). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): diabetes mellitus, osteoarthritis of the left knee and right ankle, obesity, cellulitis of the fourth toe of the right foot, and Charcot foot disorder. (Admin. Tr. 17). The ALJ also found Plaintiff had the following non-severe impairments:  hyperlipidemia, hypertension, retinopathy, sleep apnea, depression, and anxiety. (Admin. Tr. 17-18). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) subject to the following additional limitations:

> [Plaintiff] can occasionally operate foot controls with both lower extremities. He can frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds. [Plaintiff] can frequently balance, stoop or crouch. He can occasionally kneel and crawl. He can frequently be exposed to extreme cold, extreme heat, unprotected heights, moving mechanical parts, humidity, wetness, dust, fumes, gases, odors, poor ventilation and other pulmonary irritants. He can occasionally be exposed to vibrations.

(Admin. Tr. 19).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 24). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cashier II (DOT 211.462-010); bakery worker, conveyor line (DOT 524.687-022); and information clerk (DOT 237.367-018), each with at least 37,000 jobs nationally. (Admin. Tr. 25).

**B.**    **WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff alleges that the ALJ erred in evaluating the treating and consultative medical opinions; in failing to find an RFC which required Plaintiff to elevate Plaintiff's legs and leave his workstation due to Charcot foot and foot neuropathy, which acknowledged Plaintiff's need to be off-task or absent and to take unscheduled breaks due to Plaintiff's seizures and diabetes, and which required cane use; and by failing to evaluate and discuss his evaluation of the statements made by Plaintiff's wife about Plaintiff's seizures and their effects. (Doc. 14, pp. 12-26).[20]

Because Plaintiff has raised allegations with regards to the ALJ's handling of opinion evidence, an overview of the applicable regulations is a good place to begin. The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her]

---

[20] Plaintiff's enumerated allegations include that the ALJ erred by failing to consider the limitations from Plaintiff's severe impairments of diabetes mellitus, osteoarthritis of the left knee and right ankle, obesity, and cellulitis of the fourth toe of the right foot and limitations from Plaintiff's non-severe impairments of Charcot Foot, bi-lateral neuropathy of the feet, frequent seizures and related cognitive issues, and bi-lateral ankle pain when determining the RFC and failing to afford proper weight to opinions from Dr. Slagle, Dr. Kase and Dr. Kneifati, as compared to the opinions from the State Agency Consultants. (Doc. 14, pp. 1-2).

impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)    [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)   [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)  [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)   [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.[21]

A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.[22] If one medical source submits multiple medical opinions, and ALJ

---

[21] 20 C.F.R. § 404.1513(a)(2).

[22] 20 C.F.R. § 404.1502(d).

will articulate how he or she considered the medical opinions from that medical source in a single analysis.[23]

The Commissioner's regulations define "prior administrative medical findings":

> Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
> (i)   The existence and severity of your impairment(s);
>
> (ii)  The existence and severity of your symptoms;
>
> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
> (iv)  Your residual functional capacity;
>
> (v)   Whether your impairment(s) meets the duration requirement; and
>
> (vi)  How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.[24]

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to

---

[23] 20 C.F.R. § 404.1520c(b)(1).

[24] 20 C.F.R. § 404.1513(a)(5).

which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion.[25]

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[26] The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ's consideration of the other factors is discretionary unless there are two equally persuasive medical opinions about the same issue that are not exactly the same.[27] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight,

---

[25] 20 C.F.R. § 404.1520c(c).

[26] 20 C.F.R. § 404.1520c(b)(2).

[27] 20 C.F.R. § 404.1520c(b)(3).

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[28]

Here, with regard to Plaintiff's allegation that the ALJ erred in evaluating the treating and consultative medical opinions, Plaintiff specifically argues:

> The ALJ did not afford proper weight to the statements from Claimant's orthopedic doctor, Dr. Richard B. Slagle, or Claimant's primary care physician, Dr. Case, who have treated Claimant on a regular and consistent basis for his severe impairments (as previously identified herein). (Admin Tr. 347 and 359). The ALJ did not properly consider and weigh the opinions of Dr. Slagle or Dr. Kase, no matter how brief, as they relate to Claimant's ability to work, using the factors under 20 C.F.R. § § 404.1520(c). The ALJ did not offer analysis of the (1) length, (2) frequency, (3) purpose, (4) extent, and examining relationship between Claimant and Dr. Slagle or Dr. Kase, and had he done, so, he should have afforded greater weight to Dr. Slagle's and Dr. Kase's opinions.

(Doc. 14, pp. 25-26). Plaintiff also argues that the ALJ should have found greater RFC limitations because state agency consultative examiner, Dr. Kneifati, found greater RFC limitations. (Doc. 14, p. 26). However, an ALJ is not required to evaluate the length, frequency, purpose, or extent of the treating or examining relationship where, as here, the ALJ has found some opinions more persuasive than others. Here, the ALJ found the opinions of Dr. Fox, Dr. Williams, Dr. Melcher, and Dr. Ledermann persuasive and found the opinions of Dr. Slagle, Dr. Kase, and Dr.

---

[28] 20 C.F.R. § 404.1520c(a).

Kneifati unpersuasive. (Admin. Tr. 22-24). Because the ALJ did not find two differing opinions equally persuasive, the ALJ was not required to provide written analysis of the length, frequency, purpose, or extent of the treating or examining relationship.[29] With regard to Plaintiff's argument that the ALJ should have followed the opinion of Dr. Kneifati in formulating the RFC, Plaintiff is incorrect. "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another" as long as he does not "reject evidence for no reason or for the wrong reason" and "consider[s] all the evidence and give[s] some reason for discounting the evidence []he rejects."[30] Here, the ALJ rejected the opinion of Dr. Kneifati because it was "unsupported by his examination of the claimant, which shows the claimant was in no acute distress with normal gait, normal stance, full strength, no muscle atrophy, intact hand and finger dexterity, and full hand strength (B17F)." (Admin. Tr. 22-23). Therefore, the ALJ provided "some reason for discounting" the opinion of Dr. Kneifati, and his reason was relevant. Therefore, Plaintiff's allegation that the ALJ did not properly evaluate the treating and examining medical opinions is rejected.

---

[29] 20 C.F.R. § 404.1520c(b)(3).

[30] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981) and *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Plaintiff next alleges that the ALJ erred in failing to find an RFC which required Plaintiff to elevate Plaintiff's legs and leave his workstation due to Charcot foot and foot neuropathy, which acknowledged Plaintiff's need to be off-task or absent and to take unscheduled breaks due to Plaintiff's seizures and diabetes, and which required cane use. (Doc. 14, pp. 12-22). Specifically, Plaintiff argues:

> The ALJ erred and abused his discretion in failing to include any accommodations in Claimant's RFC to account for Claimant's need to elevate his feet and legs during the workday to deal with his foot-related health issues . . . . as well as the Claimant's need to get up and walk away from his work station periodically (which would render Claimant unemployable per the Vocational Expert). (Admin Tr. 60-62, 346, and 352). Further, the ALJ also erred in failing to account for the fact that when Claimant was last working and exerting himself his blood sugars were uncontrolled, causing Claimant to be off task, to take an unscheduled breaks, or leave work early to deal with the issues related to both high and low blood sugar levels. (Admin Tr. 289, 297-299, 323, 328, 331, 346, 400 and 408) . . . . The ALJ also erred and abused his discretion by failing to consider the need for Claimant to use a cane to stand and balance . . . . (Admin Tr. 61-62, 380-381, 385, 503-504 and 508) . . . .

> The Administrative Law Judge erred and abused his discretion in failing to consider the effect of Claimant's other impairments, including his Charcot Foot and related arthropy, bi-lateral neuropathy of the feet, frequent seizures and related cognitive issues, and bi-lateral ankle pain. In fact, a review of the ALJ's decision reveals that the ALJ spent little time considering or discussing these disorders, and offers almost no limitation in particular regarding any of these impairments, despite treatment records evidencing ongoing issues, particularly with regards to Claimant's Charcot Foot and related arthropy, bi-lateral neuropathy of the feet, frequent seizures and related cognitive issues, and bi-lateral

ankle pain. (*See medical records cited previously herein*) . . . .[31] In particular, the ALJ erred and abused his discretion in failing to include any non-exertional limitations in Claimant's RFC, despite his seizure disorder and related cognitive issues, which, when combined with his complaints of pain, impact on his ability to focus, sleep (causing irritability), remain on task and concentrate, and may necessitate unscheduled breaks, as well as regular absenteeism from work. (Admin Tr. 331).

The ALJ erred and abused his discretion by failing to properly consider the limitations from Claimant's frequent seizures, even if they are absence type seizures, which, although not as severe as grand mal seizures, would cause enough interference with Claimant's ability to work on a sustained basis, particularly his need for unscheduled breaks, due to dealing with the absence seizures, which, according to the Vocational Expert, would render Claimant unemployable. The ALJ also erred and abused his discretion by failing to properly evaluate Claimant's wife's credibility in her statements regarding his absence seizures, and the effects of these seizures on him after they occur, as they are typically occurring when he is at home, and not at a doctor's office, or emergency room, such as one may see with a grand mal seizure . . . . The diagnosis of Charcot foot bilaterally in and of itself should have warranted more significant limitations in terms of Claimant's ability to walk, sit and stand, as the condition is progressive and is related to a worsening of the neuropathy in Claimant's feet, and as this condition is often treated by taking pressure off of the feet (the kind of pressure from walking and standing at work) and often elevating the feet (such as what Claimant is doing each day) to such an extent that Claimant would be unemployable.

(Doc. 14, pp. 12-22). Here, Plaintiff cites no support for his assertions that he needs

to elevate his legs, take breaks, be absent, or use a cane. If Plaintiff intends to rely

---

[31] I am not certain which records Plaintiff here intends to cite. Citations in briefs are best given repeatedly to ensure clear communication.

upon treating and consultative medical opinions, the ALJ found those opinions unpersuasive. (Admin. Tr. 22-24). Plaintiff cannot therefore rely upon those opinions. Specifically with regard to Plaintiff's alleged need for a cane, the burden is high for claimants to demonstrate the medical necessity of a hand-held assistive device. *Rodkey v. Berryhill*, No. CV 1:17-784, 2019 WL 1781541, at *6 (D. Del. Apr. 23, 2019) (citing *Paxton v. Berryhill*, 2019 WL 1376073, at *2 (S.D.W. Va. Mar. 27, 2019)). Neither a claimant's testimony that an assistive device is necessary nor a claimant's testimony that an assistive device was prescribed to the claimant along with medical record notes of the claimant's use of an assistive device will establish the medical necessity of the assistive device.[32] Essentially, a claimant only demonstrates need for an assistive device when the claimant has provided a written medical opinion from an acceptable medical source as defined in 20 C.F.R. § 404.1502 which states that an assistive device is medically necessary, the

---

[32] *See Williams v. Colvin,* No. 3:13-CV-2158, 2014 WL 4918469 at *10-11 (M.D. Pa. Sept. 30, 2014) (finding that a claimant's testimony about use of a cane did not satisfy SSR 96-9p's direction that "medical documentation" is required to show medical necessity); *Dyer v. Colvin,* No. 3:14-CV-1962, 2015 WL 3953135 at *18 (M.D. Pa. June 29, 2015) (finding that a claimant's testimony that a cane was prescribed by a Certified Physician Assistant and objective records noting that the claimant was using a cane are insufficient to show medical necessity under SSR 96-9p); and *Schade v. Colvin*, 13-1071, 2014 WL 320133 at *8-9 (W.D. Pa. Jan. 29, 2014) (finding an ALJ did not err by excluding cane use from an RFC assessment where there was no medical documentation establishing the need for a hand-held assistive device).

circumstances in which it is needed, and the reason(s) or impairment(s) causing its necessity.[33] Here, however, even when alleging that the ALJ should have found Plaintiff needed a cane to ambulate, take unscheduled breaks, and elevate his feet, Plaintiff cites to the findings of Dr. Kneifati and nurse practitioner Hammon, who found Plaintiff did not need a cane to ambulate and did not mention specialty shoes or Plaintiff's need for breaks or to elevate feet. (Doc. 14, p. 17) (citing opinions found at Admin. Tr. 384, 386, 502, 504). In fact, Dr. Kneifati stated that Plaintiff "brought no assistive device to the exam." (Admin. Tr. 500). The alleged error is rejected.

Finally, Plaintiff alleged that the ALJ erred in failing to evaluate and discuss the evaluation of the statements made by Plaintiff's wife about Plaintiff's seizures and their effects. (Doc. 14, p. 22). However, Plaintiff's wife did not discuss Plaintiff's seizures, or even use the word "seizure" during the administrative hearing. (Admin. Tr. 53-57). Therefore, Plaintiff's third contention of error is rejected.

---

[33] *See* SSR 96-9P, 1996 WL 374185 (S.S.A. July 2, 1996); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding that a doctor's reference to a "script" for a cane and the doctor's opinion that a cane was medically necessary for ambulation were insufficient medical evidence of the claimant's need for a cane because the doctor's opinion did not further discuss the medical necessity of the cane); *Grimes v. Kijakazi*, No. CV 20-1367, 2022 WL 604865, at *1, fn. 3 (W.D. Pa. Feb. 28, 2022).

**V.    CONCLUSION**

Accordingly, I find that Plaintiff's request for reversal of the ALJ's decision

be Denied as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of Kilolo Kijakazi.

(3)    Appropriate Orders will be issued.


Date: March 29, 2023                              BY THE COURT

                                                  *s/William I. Arbuckle*
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge